# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Conseco, Inc., et al.,[1] | ) | |
| | ) | Case No. 02 B49672 |
| Debtors. | ) | Honorable Carol A. Doyle |
| | ) | (Jointly Administered) |
| | ) | |

[~~FINDINGS AND PROPOSED~~] ORDER CONFIRMING FINANCE COMPANY
DEBTORS' SIXTH AMENDED JOINT LIQUIDATING PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

The Initial Finance Company Debtors[2] having filed voluntary petitions for relief under
chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on December 17, 2002
(the "Initial Petition Date"), the CFC Subsidiary Debtors having filed voluntary petitions under
chapter 11 of the Bankruptcy Code on February 3, 2003 (the "CFC Subsidiary Petition Date"),
the New Filing Entities having filed voluntary petitions under chapter 11 of the Bankruptcy Code
on June 2, 2003, (the "New Filing Entities' Petition Date") and Conseco Finance Credit Card

---

[1] The Finance Company Debtors comprise the following entities: (i) Conseco Finance Corp. and Conseco
Finance Servicing Corp. (n/k/a Green Tree Servicing LLC) (the "CFC Initial Debtors"); (ii) Conseco Finance
Corp. - Alabama (n/k/a Green Tree AL LLC), Conseco Finance Credit Corp. (n/k/a Green Tree Credit LLC),
Conseco Finance Consumer Discount Company (n/k/a Green Tree Consumer Discount Company), Conseco
Finance Canada Holding Company, Conseco Finance Canada Company, Conseco Finance Loan Company
(n/k/a Green Tree Loan Company), Rice Park Properties Corporation, Landmark Manufactured Housing, Inc.,
Conseco Finance Net Interest Margin Finance Corp. I, Conseco Finance Net Interest Margin Finance Corp. II,
Green Tree Finance Corp. - Two, Conseco Agency of Nevada, Inc., (n/k/a Green Tree Insurance Agency of
Nevada, Inc.) Conseco Agency of New York, Inc., (n/k/a Green Tree Insurance Agency of New York, Inc.),
Green Tree Floorplan Funding Corp., Conseco Agency, Inc., (n/k/a Green Tree Insurance Agency, Inc.),
Conseco Agency of Alabama, Inc., (n/k/a Green Tree Insurance Agency of Alabama, Inc.), Conseco Agency of
Kentucky, Inc., (n/k/a Green Tree Insurance Agency of Kentucky, Inc.), and Crum-Reed General Agency, Inc.
(n/k/a Green Tree Insurance Agency of Texas, Inc.) (collectively, the "CFC Subsidiary Debtors"), (iii) Green
Tree Residual Finance Corp. I, and Green Tree Finance Corp. - 5 (the "New Filing Entities"); and (iv) Conseco
Finance Credit Card Funding Corp. ("CFCCFC").

[2] Unless otherwise specified, capitalized terms and phrases used herein shall have the meanings ascribed to them
in the Plan. To the extent any provision of this Confirmation Order conflicts with, or is in any way inconsistent
with, the terms of the Plan, the terms and provisions of this Confirmation Order shall govern and control.

DEFENDANT'S
EXHIBIT
C

Funding Corp. having filed a voluntary petition under chapter 11 on June 24, 2003 (the "CFCCFC Petition Date", and, with respect to any Finance Company Debtor, the Initial Petition Date, CFC Subsidiary Petition Date, New Filing Entities' Petition Date or CFCCFC Petition Date, as the case may be, being referred to as its "Petition Date"); the Finance Company Debtors having filed on September 4, 2003, the *Finance Company Debtors' Sixth Amended Joint Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Sixth Amended Plan" or the "Plan");[3] the Finance Company Debtors having filed on August 18, 2003, the *Finance Company Debtors Fifth Amended Joint Liquidating Plan of Reorganization pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Fifth Amended Plan"); the Finance Company Debtors having filed, on July 16, 2003, the *Finance Company Debtors' Fourth Amended Joint Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Fourth Amended Plan"); on June 17, 2003, the Finance Company Debtors having filed the *Finance Company Debtors' Third Amended Joint Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Third Amended Plan"); and on May 7, 2003, (i) the *Finance Company Debtors' Second Amended Disclosure Statement for the Finance Company Debtors' Second Amended Joint Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Disclosure Statement") and (ii) the *Finance Company Debtors' Second Amended Joint Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Second Amended Plan"); and on June 12, 2003, the Finance Company Debtors having filed the *Supplement to Finance Company Debtors' Second Amended Joint*

---

[3]    A copy of the Plan is attached hereto as Exhibit A and is incorporated herein by reference.

*Liquidating Plan of Reorganization"*; and on September 4, 2003, the Finance Company Debtors having filed their *Amended Supplement to the Finance Company Debtors' Sixth Amended Joint Liquidating Plan of Reorganization*; the Court having approved the Disclosure Statement pursuant to that certain Order dated May 7, 2003 (the "Solicitation Procedures Order"); the Finance Company Debtors' having distributed the Plan and Disclosure Statement to all Holders of Impaired Claims against the Finance Company Debtors entitled to vote Classes 3, 4 and 5, (the "Voting Classes" together with a solicitation of votes to accept or reject the Plan, beginning on or about May 12, 2003, consistent with the Solicitation Procedures Order; this Court, having set June 11, 2003, at 2:00 pm central time as the date and time of a hearing pursuant to Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 1126, 1128 and 1129 of the Bankruptcy Code to consider the Confirmation of the Second Amended Plan (the "Confirmation Hearing"); this Court having rescheduled the Confirmation Hearing at the request of the Finance Company Debtors to June 13, 2003, at 9:00 a.m. central time; the Court having continued the Confirmation Hearing to June 17, 2003, at 11:00 a.m. central time; on June 19, 2003, this Court having entered the *Interlocutory and Conditional Order Approving Finance Company Debtors' Third Amended Joint Liquidating Plan of Reorganization Subject to Confirmation Conditions and Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Interlocutory Approval Order") conditionally confirming the Third Amended Plan; on June 20, 2003, this Court having entered the *Corrected Interlocutory and Conditional Order Approving Finance Company Debtors' Third Amended Joint Liquidating Plan of Reorganization Subject to Confirmation Conditions and Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Corrected Interlocutory Approval Order"); this Court having entered the *Order (I) Approving (A) Notice of the TOPrS Settlement*

3

to the Lenders and TOPrS Holders and (B) Release Provision Opt-Out Notices and (II) Setting a

Hearing Date for Plan Confirmation and the TOPrS Settlement (the "Opt-Out Notice Order");

the *Affidavit of Stephenie Kjontvedt of Bankruptcy Management Corporation Certifying the*

*Tabulation of the Ballots Received for the Finance Company Debtors' Plan* (the "Voting

Report") having been filed with the Court on June 16, 2003; the *Amended Affidavit of Stephenie*

*Kjontvedt of Bankruptcy Management Corporation Certifying the Tabulation of the Ballots*

*Received for the Finance Company Debtors' Plan* having been filed with the Court on July 16,

2003 (the "Amended Voting Report"); on September 5, 2003, the *Second Amended Affidavit of*

*Stephenie Kjontvedt of Bankruptcy Management Corporation Certifying the Tabulation of the*

*Ballots Received for the Finance Company Debtors' Plan* having been filed with the Court (the

"Second Amended Voting Report"); Lehman having changed its vote as a Class 3 Holder and a

Class 5 Holder, respectively, to accept the Third Amended Plan.  On September [9], 2003, the

*Affidavit of Stephanie Kjonvedt of Bankruptcy Management Corporation Certifying the*

*Tabulation of Finance Company Release Provision Opt-Out Notices* having been filed with this

Court (the "Release Provision Opt-Out Notice Report"); the *Affidavit of Stephenie Kjontvedt of*

*Bankruptcy Management Corporation Certifying the Procedures for Distribution of Solicitation*

*Materials* (the "Kjontvedt Solicitation Affidavit") having been filed with this Court on June 13,

2003; the Finance Company Debtors having filed the *Affidavit of Charles H. Cremens In Support*

*of Confirmation of the Finance Company Debtors' Second Amended Joint Liquidating Plan of*

*Reorganization Pursuant to Chapter 11 of the United States Code* (the "Cremens Affidavit") on

June 13, 2003; and this Court having scheduled the final confirmation hearing for September 9,

2003; this Court having reviewed the Sixth Amended Plan and the Disclosure Statement and

having determined that the changes from the Second Amended Plan did not materially modify

the Sixth Amended Plan and/or were consented to by all parties entitled to vote; this Court having had the opportunity to fully consider and rule upon the objections to Confirmation filed by the TOPrS Committee, the United States Trustee and the Bazzle-Lackey-Flemmings Objectors; ~~this Court having expressly overruled~~ the objections brought to Confirmation by the *(having been withdrawn by Order of this Court)* Bazzle-Lackey-Flemmings Objectors; this Court having reviewed the Plan and Disclosure Statement; this Court having reviewed the above-listed pleadings and all filed exhibits, statements and comments regarding Confirmation; this Court having heard the statements of counsel in respect of Confirmation at the Confirmation Hearing; this Court having considered all testimony presented and evidence admitted by affidavits or otherwise at the Confirmation Hearing; this Court having taken judicial notice of all papers and pleadings on file in the Chapter 11 Cases; the TOPrS Committee and all parties-in-interest in the Finance Company Debtors' Chapter 11 Cases having had the opportunity to review, comment and object to the form of this Confirmation Order; and it appearing to this Court that (a) notice of the Confirmation Hearing and the opportunity of any party in interest to object to Confirmation were adequate and appropriate as to all parties to be affected by the Plan and the transactions contemplated thereby, and (b) the legal and factual bases presented at the Confirmation Hearing establish just cause for the relief granted in this Confirmation Order; this Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:[4]

---

[4]  This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable by Fed. R. Bankr. P. 7052 and Fed. R. Bankr. P. 9014. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

## I.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

a)    On their respective Petition Dates, each of the Finance Company Debtors commenced a Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Finance Company Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code, and venue in the Northern District of Illinois was proper as of the respective Petition Date and continues to be proper. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Moreover, the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### Modifications to the Plan

b)    Any modifications to the Plan described and/or set forth herein constitute technical changes and/or changes with respect to particular Claims by agreement with Holders of such Claims, and do not materially and adversely affect or change the treatment of any Claims or Equity Interests. Accordingly, pursuant to Fed. R. Bankr. P. 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

c)    Out of an abundance of caution, and pursuant to an order of the Court dated July 22, 2003, the Finance Company Debtors sent notice (the "Plan Modification Notice") on July 22, 2003, of the modifications in the Fourth Amended Plan and gave all Creditors in the Voting

Classes 3, 4 and 5, the opportunity to (i) change their votes if they had previously voted or (ii) vote to accept or reject the Plan if they had not previously voted. The deadline for Creditors to respond to this notice was 5:00 p.m., Central Time, August 8, 2003. Any Creditors who previously voted to accept or reject the Second Amended Plan and who did not change their votes are deemed to have accepted or rejected the Plan, in accordance with such previous votes.

d)      On September 4, 2003, the Solicitation Agent filed the Second Amended Joint Voting Report, which tabulated the vote changes resulting from the Plan Modification Notice being sent to Creditors in the Voting Classes.

e)      Further, out of an abundance of caution, and pursuant to the Opt-Out Notice Order, the Finance Company Debtors sent notice (the "Release Provision Opt-Out Notice") on August 16, 2003, to Creditors in Classes 4 and 5 giving Holders of Claims in these Classes who had not previously voted to accept the Plan, but who nonetheless would be entitled to receive a distribution under the Plan, the option to elect to opt out of the third-party release of Art. XI.C of the Plan (the "Release Provision") by the opt out deadline of 5:00 p.m., central time, September 8, 2003. Holders who had previously voted to accept the Plan are bound by the Release Provision and thus were not entitled to opt out pursuant to the Release Provision Opt-Out Notice.

f)      On September 4, 2003, the Solicitation Agent filed the Release Provision Opt-Out Notice Report, which tabulated those Holders in Classes 4 and 5 who were entitled to opt out and who so elected to opt out of the Release Provision.

Solicitation Procedures Order

g)      On May 7, 2003, the Court entered the Solicitation Procedures Order, which, among other things, (i) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017; (ii) fixed June 11, 2003, at 2:00 p.m., central time, as the date and time for commencing the

Confirmation Hearing; (iii) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and (iv) established certain procedures for soliciting and tabulating votes to accept or reject the Plan.

Publication of Confirmation Hearing Notice

h)    As evidenced by the Kjontvedt Solicitation Affidavit, on May 13, 2003, the Finance Company Debtors published the Confirmation Hearing Notice in the national editions of The Wall Street Journal and The USA Today, as well as, the Chicago Tribune, the Minneapolis Star Tribune, the Indianapolis Star, and the St. Paul Pioneer Press.

Voting Tabulation Report

i)    On June 16, 2003, the Finance Company Debtors filed with the Court a report certifying the method and results of the Ballot tabulation for each of the Voting Classes to accept or reject the Plan (the "Voting Report"). On July 16, 2003, the Finance Company Debtors filed with the Court an amended report certifying the results of the Ballot tabulation of the Voting Classes to accept or reject the Plan (the "Amended Voting Report"). On September 4, 2003, the Finance Company Debtors filed the Second Amended Voting Report certifying the results of the Ballot tabulation of the Voting Classes after the Plan Modification Notice was sent to Holders thereof. On September [9], 2003, the Finance Company Debtors filed the Release Provision Opt-Out Notice Report certifying the results of the tabulation of Opt-Out Notices returned by Holders entitled to opt out of the Release Provision.

Judicial Notice

j)    The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents on file, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11

Cases. The Court admits into evidence each document referenced in this Order. The resolution of objections to Confirmation by the Corrected Interlocutory Approval Order and the Opt-Out Notice, and as explained on the record at the Confirmation Hearing, are hereby incorporated by reference.

## Transmittal and Mailing of Materials: Notice

k)    Due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan, has been given in accordance with the procedures set forth in the Solicitation Procedures Order to (a) the Voting Classes, which comprise all known Holders of Claims against the Finance Company Debtors (including the New Filing Entities and CFCCFC) as of the Voting Record Date who are entitled to vote on the Plan, (b) the office of the United States Trustee; (c) the Securities and Exchange Commission and (d) all parties listed on the "retained actions" schedules. The Disclosure Statement (including exhibits thereto, one of which was the Second Amended Plan), the Confirmation Hearing Notice, the Solicitation Procedures Order and the appropriate Ballot(s) or Master Ballot were transmitted and served in substantial compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and such transmittal and service was adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing, as continued from time to time, and other bar dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and Solicitation Procedures Order, and no other or further notice is, or shall be, required.

## Transmittal of Release Provision Opt-Out Notice: Notice

l)    The Release Provision Opt-Out Notices were properly served pursuant to the Release Provision Opt-Out Notice Report. The Release Provision Opt-Out Notices provided

adequate and sufficient opportunity for Holders receiving them to timely return their opt-out forms in accordance with applicable law.

Solicitation

m)    The Finance Company Debtors, the Committee (and their current and former members and ex officio members), and their respective directors, officers, agents, affiliates, representatives, attorneys and advisors have solicited votes on the Plan and distributed solicitation materials and tabulated Ballots in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, applicable Bankruptcy Rules, including Fed. R. Bankr. P. 3017 and Fed. R. Bankr. P. 3018, the Disclosure Statement, the Solicitation Procedures Order, and all other applicable rules, laws and regulations. They are therefore entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X.D of the Plan.

Burden of Proof

n)    The Finance Company Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code, by clear and convincing evidence, which exceeds the applicable evidentiary standard in this Court of a preponderance of the evidence. The Court also finds that the Finance Company Debtors have satisfied the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code with clear and convincing evidence.

Compliance with Requirements of Section 1129 of the Bankruptcy Code

Section 1129(a)(1) – Compliance with Applicable Provisions of the Bankruptcy Code

o)    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a) of the Bankruptcy Code, including, without limitation, sections 1122

and 1123 of the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article IV of the Plan designates Classes of Claims and Equity Interests (other than Administrative Claims and Priority Tax Claims, which are not required to be classified).[5] As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims and Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  The Finance Company Debtors have presented clear and convincing evidence that valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Equity Interests.

p)      Pursuant to sections 1123(a)(2) and (3) of the Bankruptcy Code, Article IV of the Plan specifies all Claims that are not impaired and specifies the treatment of all Claims and Equity Interests that are impaired.  Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article IV of the Plan also provides the same treatment for each Claim or Equity Interest within a particular Class.

q)      Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate and proper means for implementing the Plan.  The Finance Company Debtors will have, as of the Effective Date, sufficient cash to make all payments required to be made on or about the Effective Date pursuant to the terms of the Plan.  Moreover, Article VI and various other provisions of the Plan specifically provide for adequate means for implementing the Plan, including, without limitation: (a) selling assets; (b) establishing the Post-Consummation Estate;

---

[5]  The Administrative Claims and the Priority Tax Claims are not required to be designated pursuant to section 1123(a)(1) of the Bankruptcy Code.  11 U.S.C. § 1123(a)(1).  For treatment of the Administrative Claims and the Priority Tax Claims, see paragraph bb) of this Confirmation Order.

(c) funding expenses of the Post-Consummation Estate; (d) appointing a Plan Administrator; (e) cancelling notes, instruments, debentures and equity securities; (f) creating, without duplication, the Claims Settlement Escrow Account, Professional Fee Sub-Escrow Account, Post-Consummation Estate Budget Sub-Escrow Account, Employee Benefit Sub-Escrow Account, 93/94 Note Claim Escrow Account, Consent Agreement Reserve Account, the HE/HI/REC Reserve Account, the Shared Recovery Escrow Account and BED Escrow Account; (h) generally allowing for all corporate action necessary to effectuate the Plan; (i) listing the source of cash from which the Finance Company Debtors will make payments under the Plan; and (j) providing for the payment of any retiree benefits as defined in section 1114(a) of the Bankruptcy Code. Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

r)    Section 1123(a)(6) of the Bankruptcy Code, which requires a reorganizing debtor's charter to include certain provisions, is inapplicable because the Finance Company Debtors are liquidating.

s)    The Plan complies with section 1123(a)(7) of the Bankruptcy Code, regarding the selection of individuals to administer debts, because the selection of the Post-Consummation Estate Advisory Board and the Plan Administrator has been accomplished in a fair and reasonable manner, consistent with public policy.

t)    The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to Holders of Claims, (b) the disposition of executory contracts and unexpired leases, (c) the retention of, and the right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived or released under the Plan, (d) resolution of Disputed Claims, (e) allowance of certain

Claims, (f) indemnification obligations, (g) releases by the Debtors and Debtors-in-Possession, and (h) releases by holders of Claims and Equity Interests.

u)    Finally, the Plan is dated and identifies the entities submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).

### Section 1129(a)(2) -- Compliance of the Finance Company Debtors with Applicable Provisions of the Bankruptcy Code

v)    The Finance Company Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Fed. R. Bankr. P. 3017, Fed. R. Bankr. P. 3018 and Fed. R. Bankr. P. 3019. In particular, the Finance Company Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code. Moreover, the solicitation of acceptances or rejections of the Plan was (a) pursuant to an order of this Court approving the Disclosure Statement and form of ballots, (b) in compliance with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation, and (c) solicited after disclosure to Holders of Claims or Equity Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code. Finally, the Finance Company Debtors, their directors, officers, employees, agents, affiliates and Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

### Section 1129(a)(3) -- Proposal of Plan in Good Faith

w)    The Finance Company Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. See Fed. R. Bankr. P. 3020(b).

13

The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of maximizing the value of the Finance Company Debtors' assets and the recovery to Holders of Claims under the circumstances of these cases.

### Section 1129(a)(4) -- Bankruptcy Court Approval of Certain Payments as Reasonable

x)    Pursuant to section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Finance Company Debtors or by any person acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, including all administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Cases, has been, or will be disclosed to this Court. Any such payment made before Confirmation was reasonable, and was made with appropriate authority of the Court. All such payments to be fixed after Confirmation shall be made pursuant to the Post-Consummation Estate Budget or the terms of the Plan, and are subject to the approval of this Court as reasonable and consistent with this Order.

y)    The fees payable to the Plan Administrator pursuant to the Bridge Retention Letter (a copy of which is in the Plan Supplement) are hereby approved as reasonable under section 1129(a)(4) of the Bankruptcy Code.

z)    In addition, fees and expenses incurred by Professionals retained by the Finance Company Debtors or the Committee shall be payable according to the Orders approving each such Professional's retention.

Section 1129(a)(5) — Disclosure of Identity and Affiliations of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

aa)    Section 1129(a)(5) of the Bankruptcy Code is inapplicable in that the Finance Company Debtors are not reorganizing, but are liquidating pursuant to the Plan. To the extent Section 1129(a)(5) applies to the Post-Consummation Estate, the Finance Company Debtors have disclosed that they, together with the Committee, have determined that Bridge Associates, LLC, and Anthony H. N. Schnelling as Bridge's representative, shall be the Plan Administrator. The Finance Company Debtors and the Committee shall identify the members of the Post-Consummation Estate Advisory Board prior to the Effective Date. The Finance Company Debtors have further disclosed that any current employees of the Finance Company Debtors who will provide services to the Post-Consummation Estate after the Effective Date will be retained as independent contractors.

Section 1129(a)(6) -- Approval of Rate Changes

bb)    After the Plan is confirmed, no governmental regulatory commission will have jurisdiction over the rates of the Finance Company Debtors because the Finance Company Debtors are liquidating pursuant to the Plan.

Section 1129(a)(7) — Best Interests of Creditors and Equity Interest Holders

cc)    The liquidation analysis in the Disclosure Statement, the Cremens Affidavit and all other evidence adduced at the Confirmation Hearing (i) are persuasive, credible and accurate as of the dates such evidence was prepared, presented or proffered; (ii) either have not been controverted by other persuasive evidence or have not been challenged; (iii) are based upon reasonable and sound assumptions; (iv) provide a reasonable estimate of the liquidation values of the Finance Company Debtors upon conversion to a case under chapter 7 of the Bankruptcy Code; and (v) establish that each Holder of a Claim or Equity Interest in an Impaired Class that

has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Finance Company Debtors were liquidated under chapter 7 of the Bankruptcy Code.

### Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Class

dd)      Pursuant to section 1129(a)(8) of the Bankruptcy Code, Classes 1 and 2 are Unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, are therefore conclusively presumed to have accepted the Plan. On a substantively consolidated basis, as set forth in the Second Amended Voting Report, all voting Impaired Classes (including Classes 3, 4 and 5) have voted to accept the Plan. The Plan provides that Holders of Class 6 Claims will not receive any distribution or retain any property under the Plan, and Class 6 is therefore deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Nevertheless, the Plan is confirmable because, as more fully set forth in paragraphs gg-hh of this Confirmation Order, the Plan satisfies section 1129(b)(1) of the Bankruptcy Code with respect to Class 6.

### Section 1129(a)(9) – Treatment of Claims Entitled To Priority Pursuant to Section 507(a) of the Bankruptcy Code

ee)      Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Claim will be paid out of the Claim Settlement Escrow Account the full unpaid amount of such Allowed Administrative Claim in Cash (a) on the Effective Date or as soon thereafter as is practicable, (b) if such Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed, or as soon thereafter as is practicable, or (c) upon such other terms as may be agreed upon by such Holder and the respective Finance Company Debtor or otherwise upon an order of the Bankruptcy Court.

F:\Projecta 20\Confirmation Orders\Finance Company\CFC Confirmation Order v26 (Sixth Amended Plan) 16.rt00 doc

<u>Section 1129(a)(10) — Acceptance By At Least One Impaired Class</u>

ff)     Each Impaired Class of Claims entitled to vote (Classes 3, 4 and 5) has voted to accept the Plan and, to the best of the Finance Company Debtors' knowledge, do not contain "insiders." Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

<u>Section 1129(a)(11) — Feasibility of the Plan</u>

gg)     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The financial projections set forth in the Disclosure Statement, the Cremens Affidavit and evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible; (ii) have not been controverted by other evidence or sufficiently challenged in any of the objections to the Plan; and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization of the Finance Company Debtors, except as otherwise proposed in the Plan. The Finance Company Debtors will have sufficient funds to satisfy their obligations under the Plan and to fund the costs and expenses of the Post-Consummation Estate in accordance therewith.

<u>Section 1129(a)(12) — Payment of Bankruptcy Fees</u>

hh)     In accordance with section 1129(a)(12) of the Bankruptcy Code, Article XIV.D of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 each quarter until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first. The Finance Company Debtors and the Post-Consummation Estate have adequate means to pay all such fees as set forth in the Post-Consummation Estate Budget.

<u>Section 1129(a)(13) — Retiree Benefits</u>

ii)     In accordance with section 1129(a)(13) of the Bankruptcy Code, Article VI.N of the Plan provides that the Finance Company Debtors (other than the Subject Subsidiaries) shall timely pay any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, to

17

the extent that such retiree benefits are payable by the Finance Company Debtors. Such retiree benefits include those that arise from the plans, funds or programs described in the Plan Supplement, and payment of such retiree benefits shall be made out of the Claim Settlement Escrow Account.

Section 1129(b) -- Confirmation of Plan Over Nonacceptance By Impaired Class

jj)     On a consolidated basis, all voting Impaired Classes voted to accept the Plan. On a Debtor-by-Debtor basis, all Classes of Impaired Claims voted to accept the Plan other than Class 6, which, as described in paragraph aa above, is presumptively deemed to have rejected the Plan. Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan. All of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) with respect to such Impaired Classes have been met. With respect to Class 6, which is deemed to have rejected the Plan, no Holder of Claims junior to the Class 6 Claims will receive or retain any property under the Plan on account of such junior Claim, and, as evidenced by the uncontroverted valuations and estimates contained in the Disclosure Statement and put into evidence at the Confirmation Hearing, no Class of Claims or Equity Interests senior to any such Classes is receiving more than full payment on account of such Claims or Equity Interests. Section 1129(b) therefore is satisfied on a consolidated basis.

kk)     Section 1129(b) of the Bankruptcy Code is also satisfied on a de-consolidated basis, in particular because (i) all voting Impaired Classes voted to accept the Plan; (ii) Class 6 (Equity Interests), a non-voting Impaired Class, is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code as no distributions will be made thereto; and (iii) CIHC, as the sole shareholder in Class 6, has agreed to its treatment under the Plan. There are no claims or interests junior to the Class 6 Claims, and as such, no distributions will be made to any claim

18

or interest junior to the Class 6 Claims. Therefore, the distributions under the Plan comply with the absolute priority rule of section 1129(b)(2) of the Bankruptcy Code. Accordingly, the Plan is fair and equitable and does not unfairly discriminate, as required by section 1129(b) of the Bankruptcy Code.

Principal Purpose of the Plan Is Not Avoidance of Taxes

ll)    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

Treatment of Unimpaired Claims

mm)    The provisions of the Plan with respect to the Holders of Unimpaired Claims are fair and appropriate.

Objections to the Confirmation of the Plan

nn)    All objections to Confirmation filed with the Court have been withdrawn, settled or have been overruled on their merits pursuant to other orders of this Court or otherwise.

Executory Contracts And Unexpired Leases

oo)    The Finance Company Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases as set forth in Article VII of the Plan. Each assumption or rejection of an executory contract or unexpired lease pursuant to Article VII shall be legal, valid and binding upon the applicable Finance Company Debtor or the Post Consummation Estate and all other debtor or non-debtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been authorized and effectuated pursuant to an appropriate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code prior to the Confirmation Date.

pp)    The Finance Company Debtors have cured, or have provided reasonable assurance that the Post-Consummation Estate or appropriate assignee will cure, defaults (if any)

under or relating to each of the assumed contracts and leases that are being assumed by the Finance Company Debtors pursuant to the Plan. In no event shall the Subject Subsidiaries be liable to cure any such defaults and, on and after the Effective Date, the sole recourse, *if any*, to any party to an assumed unexpired lease or executory contract for the cure of a pre-existing default under such lease or contract shall be to the Post-Consummation Estate, for satisfaction subject to and in accordance with the terms of the Plan.

qq)    The Finance Company Debtors have assumed all executory contracts and unexpired leases between and among the Finance Company Debtors and American Modern Home Insurance Company and certain of its affiliates ("American Modern"), and, on the closing of the CFN Transaction, assigned all such executory contracts and unexpired leases to CFN Investment Holdings, Inc. ("CFN").[6] The Finance Company Debtors or the Post-Consummation Estate, as appropriate, shall cure any defaults owing thereunder.

Releases and Discharges

rr)    The satisfaction and releases of Claims and Causes of Action described in Article XI of the Plan, including, but not limited to, releases by Holders of Claims, constitute good faith compromises and settlements of the matters covered thereby, and are entirely consensual. Such compromises and settlements are made in exchange for consideration and are in the best interest of Holders of Claims, are fair, equitable, reasonable, and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan (i) is within the jurisdiction of

---

[6]    American Modern Home Insurance Company and its affiliates include the following companies: American Modern Home Insurance Company, American Family Home Insurance Company, American Southern Home Insurance Company, American Western Home Insurance Company, G.U.I.C. Insurance Company and American Modern Life Insurance Company.

L:\Project 20\Confirmation Orders\Finance Company\CFC Confirmation Order v26 (Clean Amended Plan) [5-05].doc

the Court under 28 U.S.C. § 1334(a), 1334(b) and 1334(d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (iii) is an integral element of the transactions incorporated into the Plan; (iv) confers material benefit on, and is in the best interest of, the Finance Company Debtors, their estates and their creditors; (v) is important to the overall objectives of the Plan to finally resolve the Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Finance Company Debtors; and (vi) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

ss)    Without limiting the generality of the foregoing, from and after the Effective Date, no claimant shall have any recourse to the Subject Subsidiaries for any obligation of any of the Finance Company Debtors (including the Subject Subsidiaries) or the Post-Consummation Estate under the Plan, and any parties asserting Claims shall have recourse, *if any*, only to the Post-Consummation Estate, and any such Claims shall be treated in accordance with the applicable provisions of the Plan.

## Preservation of Causes of Action

tt)    It is in the best interests of the Creditors and Interest Holders of the Finance Company Debtors' Estates that all Causes of Action not expressly waived, relinquished, released, compromised, transferred or settled in the Plan or any Final Order be retained by the Finance Company Debtors (before the Effective Date) and the Plan Administrator, on behalf of the Post-Consummation Estate (after the Effective Date) pursuant to Article XI of the Plan, to maximize the value of the Finance Company Debtors' Estates.

## Approval of Settlements and Compromises

uu)    (i) Pursuant to Fed. R. Bankr. P. 9019 and any applicable state law, and as consideration for the distribution and other benefits provided in the Plan, all settlements and

I:\Project X\Confirmation Order\Finance Company\JPFC Confirmation Order v26 (Third Amended Plan) (5.087).doc

compromises of Claims and Causes of Action between and among the Finance Company Debtors, Lehman, the Securitization Trustee, the 93/94 Note Holders and the Committee that are embodied in the Plan (the "Economic Settlement") are fair, equitable and in the best interests of the Finance Company Debtors and their estates and Creditors and (ii) all settlements and compromises of Claims and Causes of Action between and among any of the foregoing parties and the Holding Company Debtors embodied in the Plan are fair, equitable, reasonable and in the best interests of the Finance Company Debtors and their Estates and Creditors and shall be, and hereby are, effective and binding on all persons and entities who may have had standing to assert such Claims or Causes of Action, and no person or entity shall possess standing to assert such Claims or Causes of Action after the Effective Date.

Satisfaction of Conditions to Confirmation

vv)    Each of the conditions precedent to entry of this Confirmation Order, as set forth in Article X.A, has been satisfied or waived in accordance with the Plan.

Likelihood of Satisfaction of Conditions Precedent to Consummation

ww)    Each of the conditions precedent to the Effective Date, as set forth in Article X.B of the Plan, is reasonably likely to be satisfied.

Retention of Jurisdiction

xx)    The Court may properly retain jurisdiction over the matters set forth in Article XIII of the Plan.

Exemptions From Taxation

yy)    The Finance Company Debtors have not sold during these Chapter 11 Cases any property located in the State of Illinois that would be subject of an Illinois transfer tax eligible for exclusion under section 1146(c) of the Bankruptcy Code.

compromises of Claims and Causes of Action between and among the Finance Company Debtors, Lehman, the Securitization Trustee, the 93/94 Note Holders and the Committee that are embodied in the Plan (the "Economic Settlement") are fair, equitable and in the best interests of the Finance Company Debtors and their estates and Creditors and (ii) all settlements and compromises of Claims and Causes of Action between and among any of the foregoing parties and the Holding Company Debtors embodied in the Plan are fair, equitable, reasonable and in the best interests of the Finance Company Debtors and their Estates and Creditors and shall be, and hereby are, effective and binding on all persons and entities who may have had standing to assert such Claims or Causes of Action, and no person or entity shall possess standing to assert such Claims or Causes of Action after the Effective Date.

### Satisfaction of Conditions to Confirmation

vv)    Each of the conditions precedent to entry of this Confirmation Order, as set forth in Article X.A, has been satisfied or waived in accordance with the Plan.

### Likelihood of Satisfaction of Conditions Precedent to Consummation

ww)    Each of the conditions precedent to the Effective Date, as set forth in Article X.B of the Plan, is reasonably likely to be satisfied.

### Retention of Jurisdiction

xx)    The Court may properly retain jurisdiction over the matters set forth in Article XIII of the Plan.

### Exemptions From Taxation

yy)    The Finance Company Debtors have not sold during these Chapter 11 Cases any property located in the State of Illinois that would be subject of an Illinois transfer tax eligible for exclusion under section 1146(c) of the Bankruptcy Code.

there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. All objections and responses to, and statements and comments regarding, the Plan, to the extent not already withdrawn or resolved pursuant to the Interlocutory Approval Order or representations on the record at the Confirmation Hearing, shall be, and hereby are, overruled on their merits.

B.    Plan Modifications

3.    All modifications or amendments to the Plan since the solicitation, including, but not limited to, the Economic Settlement, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation pursuant to Fed. R. Bankr. P. 3019.

C.    Substantive Consolidation

4.    Upon the Effective Date, the Finance Company Debtors' Estates and all of the debts of all of the Finance Company Debtors, including the Lehman Subordinated Secured Claims, shall be substantively consolidated as set forth in Article II.A of the Plan.

D.    Plan Classification Controlling

5.    The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Finance Company Debtors' Creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any Creditor as representing the actual classification of such Claims under the Plan for distribution purposes; and (d) shall not be binding on the Post-Consummation Estate or the Finance Company Debtors.

24

E.    Settlement of Claims and Interests

    (a)    Treatment of the Lehman Final Secured Claims and Settlement of Other Claims and Interest

        5.    Pursuant to the agreement of Lehman, the Committee and the Finance Company Debtors, the Holders of Class 3 Claims shall be treated in accordance with the settlement embodied in Article IV of the Plan and as set forth in this Order.

    (b)    Treatment of 93/94 Note Holder Claims

        7.    Pursuant to the agreement of the 93/94 Note Holders, the Committee and the Finance Company Debtors, Holders of Class 4 Claims shall be treated in accordance with the settlement embodied in Article IV of the Plan and as set forth in this Order.

        8.    Specifically , the Finance Company Debtors shall pay the amount of ~~to~~ FN [as of September 15, 2003, plus such additional interest, costs and other expenses as may accrue thereafter under the indentures governing the 93/94 Notes)] in full, in immediately available funds by wire transfer without setoff or counterclaim by not later than one business day following the Effective Date of the Plan, to Wilmington Trust as indenture trustee for the 93/94 Notes. All payments made with respect to the 93/94 Note Claims shall be made without further application or order of this Court. Wilmington Trust's fees and expenses as included in the amount of the 93/94 Note Claims shall be deemed to be reasonable for all purposes.

    (c)    Treatment of Claims of B-2 Holders

        9.    The B-2 Guarantee Claims with respect to the manufactured housing securitization trusts are Allowed in the amount of $600 million, as set forth in this Order.

        10.    B-2 Guarantee Claims with respect to the Home Equity/Home Improvement and Recreational Vehicle Securitization Trust Certificates shall be Allowed in a

FN The exact amount shall be entered in
a stipulation and order by the

25

total amount of $34,428,014, as set forth in the B-2 Guarantee Claims Allocation Order (as defined below).

11.    The B-2 Guarantee Claims shall be allocated in accordance with the order of this Court dated August 27, 2003, entitled "*Order Approving (1) the Allocation of the Allowed Claim to Holders of Manufactured Housing Certificates Guaranteed by Conseco Finance Corp., (2) the Allowed Claims to Holders of Home Equity/Home Improvement and Recreational Vehicle Trust Certificates Guaranteed by Conseco Finance Corp., and (3) the Reserve Account for the Benefit of Holders of Home Equity/Home Improvement and Recreational Vehicle Securitization Certificates*" (the "B-2 Guarantee Claim Allocation Order").

(d)    Claims Settled by the Economic Settlement Embodied in the Plan

12.    The Claims settled by the Economic Settlement are hereby resolved as follows:

| Lehman Settlement | | | |
|---|---|---|---|
| CREDITOR | CLAIM NO | ALLEGED AMOUNT OF CLAIM | STATUS |
| LEHMAN BROTHERS HOLDINGS INC. | 49675-002354 | $0.00 | Capped at a maximum of $1,000,000.00 (Art. I.C.103) |
| LEHMAN COMMERCIAL PAPER, INC. | 49675-000003 | $6,000,000.00 | Resolved at $0.00 (Art. I.C.98) |
| LEHMAN ALI, INC. | 49675-002353 | $518,131,665.94 | Pre-petition Warehouse and Residual Facilities, comprising the Lehman Final Secured Claim (Art. I.C.98) |
| LEHMAN COMMERCIAL PAPER, INC. | 49675-002355 | $49,155,071.49 | |
| LEHMAN (As defined in the Plan) | PAID | $676,822,319.72 | |
| LEHMAN Subordinated Secured Claim | TBD | $13,500,000.00 | Allowed in the amount of $13.5 million Subordinated Secured Claim (Art. I.C.102) |

### B-2 Guarantee Claims

| CREDITOR | CLAIM NO | ALLEGED AMOUNT OF CLAIM | STATUS |
|---|---|---|---|
| US BANK NA AS SECURITIZATION TRUSTEE | 49675-002914 | UNKNOWN | All B-2 Guarantee Claims relating to manufactured housing trust certificates are resolved at Allowed aggregate amount of $600 million (Art. VI.B.); all B-2 Guarantee Claims relating to HE/HI/REC securitization trust certificates are resolved in the aggregate amount of $34,428,014, which is set forth in the B-2 Guarantee Claim Allocation Order |
| WELLS FARGO BANK MINNESOTA NA | 49675-002736 | UNKNOWN | |
| WELLS FARGO BANK MINNESOTA NA | 49675-002351 | $18,630,589.07 | |
| WELLS FARGO BANK MINNESOTA NA | 49675-002352 | $15,976,466.11 | |
| WELLS FARGO BANK MINNESOTA NA | 49675-002737 | UNKNOWN | |
| WELLS FARGO BANK MINNESOTA NA | 49675-002735 | $50,747.02 | |
| WELLS FARGO BANK MINNESOTA NA | 49675-002738 | $19,974.25 | |
| Total | | $634,428,014 | |

### 9.5% Note Claims

| CREDITOR | CLAIM NO | ALLEGED AMOUNT OF CLAIM | STATUS |
|---|---|---|---|
| WILMINGTON TRUST COMPANY | 49675-000398 | $93,711,875.12 (plus interest and fees) | Allowed at 100% (Art. IV.B.4.b) |

### Intercompany Settlements

| CREDITOR | CLAIM NO | ALLEGED AMOUNT OF CLAIM | STATUS |
|---|---|---|---|
| CIHC, INC. | s74865 | $150,750,000.00 | Resolved at $0.00 pursuant to Lehman Adversary Proceeding. |
| CIHC, INC. | 49675-002779 | $299,932,568.00 | |
| CONSECO, INC. | 49675-002780 | $179,192,482.00 | |
| Holdco Subtotal: | | $629,875,050.00 | |
| BANKERS NATIONAL LIFE INSURANCE COMPANY | 49675-002781 | $720,000.00 | |
| CONSECO FINANCE SERVICING CORP | s85868 | $122,483,083.00 | |
| CRUM-REED GENERAL AGENCY, INC | s85864 | $91,893,601.00 | |
| GREEN TREE FINANCE CORP - FIVE | s119241 | $80,097,184.00 | |
| CONSECO AGENCY, INC | s120833 | $69,685,035.27 | |
| CONSECO AGENCY OF ALABAMA, INC | s85859 | $49,548,790.00 | |
| CONSECO AGENCY, INC | s120835 | $47,456,015.06 | |
| CONSECO FINANCE VENDOR SERVICES CORPORATION | s85867 | $37,189,907.00 | |

## Intercompany Settlement

| CREDITOR | CLAIM NO | ALLEGED AMOUNT OF CLAIM | STATUS |
|---|---|---|---|
| CONSECO FINANCE CORP | s120834 | $33,020,887.55 | |
| CONSECO AGENCY OF KENTUCKY, INC | s120838 | $27,439,648.41 | |
| CONSECO AGENCY, INC | s120829 | $24,225,210.80 | |
| CONSECO AGENCY OF KENTUCKY, INC | s120832 | $20,685,028.55 | |
| MILL CREEK BANK INC, F/K/A CONSECO BANK, INC | s74867 | $20,509,916.00 | |
| CONSECO AGENCY OF KENTUCKY, INC | s85862 | $20,180,718.00 | |
| CONSECO FINANCE CORP. | s120810 | $18,453,213.63 | Resolved at $0.00 (Art. VI.B) |
| CONSECO SERVICES LLC | 49675-002778 | $18,247,824.00 | |
| CONSECO FINANCE CORP | s120816 | $11,517,328.35 | |
| CONSECO AGENCY REINSURANCE LIMITED | s85861 | $11,197,842.00 | |
| CONSECO FINANCE LOAN COMPANY | s85869 | $10,411,205.00 | |
| CONSECO AGENCY OF NEW YORK, INC | s85860 | $6,199,088.00 | |
| CONSECO FINANCE CREDIT CORP | s119239 | $5,945,590.00 | |
| CONSECO AGENCY, INC | s120825 | $4,871,030.70 | |
| CONSECO AGENCY REINSURANCE LIMITED | s120820 | $4,730,772.40 | |
| CONSECO AGENCY OF NEVADA, INC | s85863 | $3,468,308.00 | |
| CONSECO AGENCY, INC | s85858 | $2,074,085.00 | |
| CONSECO FINANCE CONSUMER DISCOUNT CO | s119240 | $1,847,388.00 | |
| CONSECO AGENCY OF KENTUCKY, INC | s120828 | $1,836,106.38 | |
| CONSECO AGENCY, INC | s120822 | $1,522,617.54 | |
| CONSECO AGENCY OF KENTUCKY, INC | s120841 | $1,521,059.25 | |
| CONSECO FINANCE CORP | s120830 | $1,283,401.85 | |
| CONSECO FINANCE CORP | s120826 | $1,005,707.03 | |
| MILL CREEK BANK, INC | s120817 | $987,151.99 | |
| MILL CREEK SERVICING CORPORATION | s85866 | $908,392.00 | |
| PERFORMANCE MATTERS ASSOCIATES, INC | s76894 | $799,572.00 | |
| CONSECO FINANCE CORP-ALABAMA | s119238 | $733,558.00 | |
| CONSECO AGENCY OF NEW YORK, INC | s120831 | $732,415.57 | |
| CONSECO AGENCY OF NEW YORK, INC | s120837 | $421,071.36 | |
| CONSECO FINANCE CORP | s120814 | $401,637.14 | |
| CONSECO AGENCY OF ALABAMA, INC | s120811 | $306,045.00 | |
| RICE PARK PROPERTIES CORPORATION | s120821 | $243,687.82 | |
| GREEN TREE RETAIL SERVICES BANK, INC | s120818 | $178,124.60 | |
| MILL CREEK SERVICING CORPORATION | s120840 | $157,693.65 | |
| CONSECO AGENCY OF ALABAMA, INC | s120836 | $91,126.36 | |
| CONSECO AGENCY OF ALABAMA, INC | s120823 | $52,609.00 | |
| CONSECO FINANCE CORP | s120809 | $40,038.94 | |

| Intercompany Settlement | | | |
|---|---|---|---|
| CREDITOR | CLAIM NO | ALLEGED AMOUNT OF CLAIM | STATUS |
| MILL CREEK SERVICING CORPORATION | s120812 | $38,862.56 | |
| CRUM-REED GENERAL AGENCY, INC | s123497 | $19,075.59 | |
| CONSECO AGENCY OF NEVADA, INC | s120827 | $8,877.91 | |
| CONVERGENT LENDING SERVICES, LLC | s120813 | $4,837.12 | |
| MILL CREEK SERVICING CORPORATION | s120815 | $2,179.97 | |
| GREEN TREE FINANCIAL CORP-TWO | s85865 | $1,000.00 | |
| RICE PARK PROPERTIES CORPORATION | s120839 | $8.50 | |
| FinanceCo Subtotal: | | $757,405,556.85 | |
| Total Intercompany Settlement: | | $1,387,280,606.85 | |

F.    Treatment of Claims of Taxing Authorities

13.    All Allowed Class 2 Claims of U.S. federal or state taxing authorities shall be treated in accordance with the provisions set forth in Article IV of the Plan.

G.    Treatment of Intercompany Claims

14.    Intercompany Claims shall be treated in accordance with the settlement between and among the Finance Company Debtors and the Reorganizing Debtors embodied within Article VI of the Plan.

H.    Effects of Confirmation

(a)    Executory Contracts and Unexpired Leases

15.    Any executory contracts or unexpired leases that the Finance Company Debtors have not assumed and assigned or rejected with the approval of the Bankruptcy Court (whether as part of the Sale Transactions or otherwise), or that are not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtors-in-Possession on the Effective Date and entry of this Confirmation Order by the Court shall

constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

16.    Any executory contracts held between and among Fiserv, Inc. ("Fiserv") and one or more of the Finance Company Debtors, if not the subject of a motion to assume the same pending as of entry of this Confirmation Order, shall be deemed rejected as of the entry of this Confirmation Order.

17.    The Finance Company Debtors have assumed all executory contracts and unexpired leases between and among the Finance Company Debtors and American Modern and, on the closing of the CFN Transaction, assigned all such executory contracts and unexpired leases to CFN Investment Holdings, Inc. ("CFN"). The Finance Company Debtors or the Post-Consummation Estate, as appropriate, shall cure any defaults pursuant to Bankruptcy Code section 365(b) owing thereunder.

18.    If rejecting an executory contract or unexpired lease pursuant to consummating the Plan results in damages to the other party or parties to any such contract or lease, any Claim for such damages, if not heretofore evidenced by a Proof of Claim that has been Filed, shall be forever barred and shall not be enforceable against the Finance Company Debtors, the Post-Consummation Estate, or their properties, successors or assigns, unless the party or parties File and serve upon counsel for the Plan Administrator a Proof of Claim on or before thirty (30) days after the later to occur of (i) the Effective Date; and (ii) the date of entry of an order by this Court authorizing rejection of a particular executory contract or unexpired lease.

(D)    Existing Injunctions and Stays Remain In Effect Until Effective Date

19.    The stay imposed by section 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date. Except as provided in paragraph [62] of this Order and unless otherwise provided in the Plan or otherwise specifically provided for by an Order of

this Court, all injunctions or stays provided for in the Chapter 11 Cases or the Plan pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order.

I.    Matters Relating to Implementation of the Plan

(a)    Immediate Effectiveness; Successors and Assigns

20.    Notwithstanding Fed. R. Bankr. P. 3020(e), 6004(g) or 7062, or otherwise, immediately upon the entry of this Confirmation Order, the terms of the Plan shall be, and hereby are, deemed binding upon the Finance Company Debtors, the Post-Consummation Estate and any and all holders of Claims and Equity Interests (irrespective of whether such Claims or Equity Interests are impaired under the Plan or whether the Holders of such Claims or Equity Interests voted to or are deemed to accept or reject the Plan), any and all non-Finance Company Debtor parties to executory contracts and unexpired leases with the Finance Company Debtors, all entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan or herein; and each Person acquiring property under the Plan and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

(b)    Corporate Authorization; Dissolution

21.    Upon the Court's entry of this Confirmation Order, all matters provided under the Plan involving the corporate structure of the Finance Company Debtors shall be deemed authorized and approved without any requirement of further action by the Finance Company Debtors, the Finance Company Debtors' shareholders or the Finance Company Debtors' boards of directors. To the extent such action has not been completed subsequent to the

entry of this Order, the Finance Company Debtors (and their boards of directors) (other than the Subject Subsidiaries) shall dissolve or otherwise terminate their existence following the Effective Date and are authorized to dissolve or terminate the existence of wholly-owned non-Debtor subsidiaries following the Effective Date as well as any remaining health, welfare or benefit plans. All officers and directors who have not otherwise previously resigned are hereby deemed to have resigned as of the Effective Date. As provided in the Plan, the entry of this Order does not adversely affect the rights, claims, liens, mortgages or security interests of Holders of Secured Claims in their respective Collateral.

22.    The Court hereby authorizes the termination of the Conseco Finance Corp. Pension Plan effective as of July 1, 2003, and the delegation of authority to officers of the Finance Company Debtors to take such actions as may be necessary and desirable to implement the pension plan termination.

(c)    Severance of Charles H. Cremens' Employment

23.    On the Effective Date, Charles H. Cremens' employment with the Finance Company Debtors shall be severed.

(d)    Escrow Accounts

24.    On the respective dates set forth below, the Finance Company Debtors shall establish each of the below-listed escrow accounts:

(i)    Creation of Claim Settlement Escrow Account

25.    On the Effective Date, CFC shall establish the Claim Settlement Escrow Account which shall be funded by the Sale Proceeds in the amount of $165,000,000.

•    Creation of Professional Fee Sub-Escrow Account

26.    Upon creation of the Claim Settlement Escrow Account, the Plan Administrator shall establish the Professional Fee Sub-Escrow Account as a sub-account within

the Claim Settlement Escrow Account, and shall reserve the amounts necessary to ensure the payment of all Accrued Professional Compensation.

• Creation of Employee Benefit Sub-Escrow Account

27. Upon creation of the Claim Settlement Escrow Account, the Plan Administrator shall establish the Employee Benefit Sub-Escrow Account as a sub-account within the Claim Settlement Escrow, and shall reserve the amounts necessary to ensure the payment of the Finance Company Debtors' proportionate share of any Shared Employee Benefit Liabilities.

• Creation of Post-Consummation Estate Budget Sub-Escrow Account

28. Upon creation of the Claim Settlement Escrow Account, the Plan Administrator shall establish the Post-Consummation Estate Budget Sub-Escrow Account as a sub-account within the Claim Settlement Escrow Account and reserve the amounts necessary for the payment of the Claims set forth in the Post-Consummation Estate Budget.

(ii) Creation of Consent Agreement Reserve Account

29. On the CFN Closing Date, the Finance Company Debtors funded the Consent Agreement Reserve Account.

(iii) Creation of 93/94 Note Claim Escrow Account

30. On the Effective Date, and pursuant to the GE Sale Order, the Plan Administrator shall establish the 93/94 Note Claim Escrow Account and reserve the amounts necessary for the payment of the Allowed 93/94 Note Claims under the Plan.

(iv) Creation of the HE/HI/REC Reserve Account

31. On the Effective Date and pursuant to the U.S. Bank Settlement Stipulation, the Finance Company Debtors shall establish the HE/HI/RBC Reserve Account in the amount of $5,000,000.

(v)    *Creation of BED Escrow Account*

32.    The BED Escrow Account may be closed upon payment of the Resolved BED Secured Claim, as set forth in the *Stipulation and Agreed Order Between The Finance Company Debtors' and the South Dakota Board of Economic Development*, entered by the Court on or about July 28, 2003.

(vi)    *Creation of the Shared Recovery Escrow Account*

33.    On the Effective Date, the Plan Administrator shall establish the Shared Recovery Escrow Agent. The Plan Administrator shall deposit all Shared Recovery Amounts into the Shared Recovery Escrow Account on the Effective Date and thereafter as Shared Recovery Amounts become available after the Effective Date.

(e)    Dismissal of Certain Actions

34.    Within one business day after the Effective Date: (i) the Committee shall execute and file Exhibit A hereto withdrawing, with prejudice, the Lehman Adversary Proceeding; and (ii) Lehman shall execute and deliver to the Finance Company Debtors Exhibit B hereto withdrawing, with prejudice, the Lehman Appeal (the "Lehman Appeal Dismissal"). The Finance Company Debtors are authorized to file the Lehman Appeal Dismissal on behalf of Lehman. The Mill Creek Standing Motion shall be deemed withdrawn with prejudice as of the Effective Date.

(f)    Distributions

35.    The distribution provisions of the Plan shall be, and hereby are, approved. The Plan Administrator, on behalf of the Post-Consummation Estate, or such other Entity as may be designated by the Plan Administrator, on behalf of the Post-Consummation Estate, will make all distributions under the Plan. The Plan Administrator will make initial distributions after the Effective Date. Whenever any distribution to be made under the Plan is due on a day other than

34

a Business Day, the Plan Administrator shall make each such distribution, without interest, on the immediately succeeding Business Day, but will have been deemed to have made each such distribution on the date due. Unless the Entity or Person receiving a payment agrees otherwise, the Plan Administrator, at its election shall make any payment in Cash to be made by the Post-Consummation Estate by check drawn on a domestic bank or by wire transfer from a domestic bank.

36. Distributions referred to in paragraphs 34-38 hereof refer to Unsecured Claims and shall be made after paying all Allowed DIP Facility Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed Lehman Final Secured Claims, Allowed 93/94 Note Claims, and after establishing and funding the Claims Settlement Escrow Account, 93/94 Note Claim Escrow Account, Shared Recovery Escrow Account, Employee Benefit Sub-Escrow Account, Professional Fee Sub-Escrow Account, Consent Agreement Reserve Account, Post-Consummation Estate Budget Sub-Escrow Account and BED Escrow Account.

37. With respect to any distribution to the Securitization Trustees for the manufactured housing securitization trusts, the Plan Administrator will provide such trustees, to the extent known, a written schedule setting forth the amount being distributed to each such trust and each class of Claims therein. The Plan Administrator shall allocate all distributions to the trusts in accordance with the B-2 Guarantee Claim Allocation Order.

38. Subject to Fed. R. Bankr. P. 9010, and except as provided in the Plan, distribution and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth in the Schedules filed with the Bankruptcy Court unless superceded by the address set forth on proofs of claim filed by any such Holders, or at the last known address of

each such Holder if no proof of claim is filed, or if the Debtors' Finance Company have been notified in writing of a change of address.

39.    As of the close of business on the date of this Order, the transfer registers for the B-2 Guarantee Claims shall be closed and there shall be no further changes in the record Holders of any B-2 Guarantee Claims.  Moreover, the Finance Company Debtors and, after the Effective Date, the Plan Administrator, shall have no obligation to recognize the transfer of any B-2 Guarantee Claims purporting to occur after the date of this Order.  The Finance Company Debtors and, after the Effective Date, the Plan Administrator, therefore shall be entitled for all purposes to recognize and deal only with those Holders of record as of the close of business on the date hereof.

(g)    Preservation of Rights of Action Not Expressly Settled or Released

40.    As provided for in the Plan and the Purchase Agreements, the Post-Consummation Estate shall retain all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in one or more of the Chapter 11 Cases including the actions specified in the Plan Supplement; *provided, however,* that retained Causes of Action do not include any actions included in the Divested Assets (if any).

41.    Except as otherwise provided in the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Claims, rights, and Causes of Action that the respective Finance Company Debtors may hold against any Entity shall vest in the Post-Consummation Estate.  The Plan Administrator, on behalf of the Post-Consummation Estate, shall retain and may exclusively enforce any and all such Claims, rights or Causes of Action.  The Plan Administrator, on behalf of the Post-Consummation Estate, shall have, pursuant to the Post-Consummation Estate Agreement, the exclusive right, authority, and discretion to institute,

[handwritten annotation: (other than any Claims, rights and Causes of Action held by the Subject Subsidiaries, which shall remain with the Subject Subsidiaries)]

prosecute, abandon, settle, or compromise any and all such Claims, rights, and Causes of Action without the consent or approval of any third party and without any further order of court.

      (h)    Prosecution of Objections to Claims

      42.    The Finance Company Debtors (or the Plan Administrator, as the case may be) shall have the exclusive authority to object to the allowance of Claims or Equity Interests Filed with the Bankruptcy Court with respect to which they dispute liability or allowance in whole or in part. The Finance Company Debtors (or the Plan Administrator, as the case may be) shall apprise the Post-Consummation Advisory Board of the status of such objections on a periodic basis. The Plan Administrator (within any parameters that the Post-Consummation Estate Agreement may establish) shall have the authority to file, settle, compromise or withdraw any objections to Claims pursuant to the terms of the Post-Consummation Estate Agreement.

      (i)    Estimation of Claims

      43.    The Finance Company Debtors or the Plan Administrator, on behalf of the Post-Consummation Estate, may at any time seek the estimation of any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, whether pursuant to the *Order Approving Estimation Procedures*, entered on February 19, 2003, or otherwise, regardless of whether the Finance Company Debtors or the Plan Administrator, as the case may be, have previously objected to any such Claim or whether this Court has ruled on any such objection. This Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.

      44.    Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that this Court estimates any contingent or Disputed Claim, the amount so estimated shall

constitute the maximum Allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Finance Company Debtors or the Post-Consummation Estate may pursue supplementary proceedings to object to the allowance of the Claim. All of the aforementioned objection, estimation and resolution proceedings are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by this Court.

      (j)    <u>Cancellation of Notes, Instruments, Debentures, Interests and Equity Securities</u>

      45.    On the Effective Date, except to the extent provided otherwise in the Plan or the CFN Purchase Agreement, all notes, instruments, certificates and other documents evidencing Claims and all Equity Securities in any of the Finance Company Debtors shall be canceled and deemed terminated as permitted by section 1123(a)(5)(F) of the Bankruptcy Code.

*Nothing herein shall be deemed to affect the mortgages granted by the Bazzle-Lackey Plaintiff or the supersedeas bonds posted with the South Carolina Courts.*

    J.    <u>Post-Consummation Estate.</u>

      (a)    <u>The Post-Consummation Estate Agreement</u>

      46.    The powers, authority, responsibilities and duties of the Post-Consummation Estate and the Plan Administrator and the Post-Consummation Estate Advisory Board are set forth in and shall be governed by the Post-Consummation Estate Agreement. The Finance Company Debtors (other than the Subject Subsidiaries) and the Committee shall have the sole authority to administer all assets prior to their transfer to the Post-Consummation Estate.

      (b)    <u>Plan Administrator</u>

      47.    The Plan Administrator's appointment shall be effective as of the Effective Date. The Plan Administrator's compensation shall be as set forth in the Post-Consummation Estate Budget.

(c)    Post-Consummation Estate Advisory Board

48.    The Finance Company Debtors (other than the Subject Subsidiaries), in conjunction with the Committee shall, prior to the Effective Date, select the Post-Consummation Estate Advisory Board pursuant to the Plan to serve in such capacity in accordance with the Plan and Post-Consummation Estate Agreement. The Post-Consummation Estate Advisory Board's appointment shall be effective as of the Effective Date.

(d)    Post-Consummation Estate Budget

49.    The Post-Consummation Estate Budget, as set forth in the First Amended Plan Supplement, is hereby approved.

(e)    Transfer of Assets By Finance Company Debtors to Post-Consummation Estate

50.    The Plan is a liquidating chapter 11 plan of reorganization that provides for the orderly liquidation of all of the Finance Company Debtors' assets (other than the Subject Subsidiaries), the determination of all Claims, and the distribution of the proceeds of the assets to Creditors. The Finance Company Debtors (other than the Subject Subsidiaries) on their own behalf and on behalf of holders of Allowed Claims shall execute the Post-Consummation Estate Agreement and take all other steps necessary to establish the Post-Consummation Estate pursuant to the Post-Consummation Estate Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Finance Company Debtors (other than the Subject Subsidiaries) shall transfer to the Post-Consummation Estate all of their right, title and interest in all Post-Consummation Estate Assets. In connection with the transfer of these assets, including rights and Causes of Action (including bankruptcy Causes of Action), any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications whether written or oral) transferred to the Post-Consummation Estate shall vest in the Post-Consummation Estate and its representatives, and the Finance Company Debtors and

the Post-Consummation Estate are authorized to take all necessary actions to effectuate the transfer of such privileges.

51.    Except as otherwise provided by the Plan, on the Effective Date, and after the Finance Company Debtors' payments and/or funding of such reserves, on behalf of the holders of Allowed Claims, the Finance Company Debtors shall transfer title to all remaining assets and such reserves (subject only to such specified liabilities) to the Post-Consummation Estate.  Upon the transfer of the Post-Consummation Estate Assets to the Post-Consummation Estate, the Finance Company Debtors shall have no interest in or with respect to the Post-Consummation Estate Assets or the Post-Consummation Estate.  Notwithstanding the foregoing, to the extent the Finance Company Debtors determine that any such transfer may implicate an exclusion in any Director and Officer Insurance Policy, the cause of action at issue shall be assigned in another manner determined by the Finance Company Debtors in their sole discretion.

(f)    Transfer of Claims to a Single Estate

52.    On the Effective Date, all Claims against the Finance Company Debtors shall be transferred to CFC and the estates of the Finance Company Debtors shall be administered as a single estate.  On, or as soon as practicable after the Effective Date, the Plan Administrator shall close all Chapter 11 Cases of the Finance Company Debtors other than the case captioned *In re Conseco Finance Corp.*, Case No. 02 B49672, and shall thereafter administer the Post-Consummation Estate as a single debtor entity.

(g)    Funding Expenses of the Post-Consummation Estate

53.    The Finance Company Debtors shall not be obligated to provide any funding with respect to the Post-Consummation Estate upon transfer of the Residual Assets to the Post-Consummation Estate.  Pursuant to the Plan and as more fully described in the Post-