IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JULIE ANN MANGINA, | ) |
| *Plaintiff,* | ) ) ) |
| vs. | ) CIVIL ACTION NO. 2:05-cv-485-B ) |
| CONSECO FINANCE CORP., GREEN TREE SERVICING, LLC, and CHRISTY MARIE GLENN KNIGHT, | ) ) ) ) |
| *Defendants.* | ) |

### MEMORANDUM BRIEF AND ARGUMENT
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant **CHRISTY MARIE GLENN KNIGHT** moves the Court for summary judgment on all claims filed by the plaintiff based on the following:

### PREFATORY STATEMENT

This case arises from a dispute between the parties herein to a collateral domestic relations matter with a tortured and protracted history which case has been pending in the Domestic Relations Division of the Circuit Court of Jefferson County since 1997[1]. Domestic relations matters are, generally, beyond the purview of Federal Courts, *Jagiella v. Jagiella*, 647 F.2d 561 (U.S.Ct.App.5th Cir.1981), and are preeminently a matter of state law. *Mangell v. Mangell*, 490 U.S. 581, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

---

[1] *Knight v. Knight*, DR-96-2807, Circuit Court of Jefferson County, Domestic Relations Division.

The plaintiff, Julie Ann Mangina, alleges herein a willful violation of the *Fair Credit Reporting Act,* 15 U.S.C. §1681. Count I alleges, pursuant to *15 U.S.C. § 1681(n),* that Defendant Christy Marie Glenn Knight attempted to obtain a copy of her credit report under false pretenses, "in order to gain advantage in a civil lawsuit regarding a domestic dispute." (*¶18, Plaintiff's Complaint*) Count III alleges state law claims of invasion of privacy claiming that Ms. Knight attempted to obtain a copy of her credit report. (*¶¶22-24, Plaintiff's Complaint*) Count IV alleges willful violation of the *Alabama Code,* §13A-8-192 and §13A-9-18, regarding identity theft and criminal impersonation respectively. Counts II and V as to Green Tree and Conseco were dismissed without prejudice pending the resolution of bankruptcy proceedings regarding each of the corporate defendants. *(Stipulation of Dismissal as to Conseco Finance Corporation and Green Tree Servicing, LLC., Document No. 11 of the Court's Docket)*

## SUMMARY OF UNDISPUTED FACTS

Plaintiff, Julie Ann Mangina, was married to Kevin Knight from August of 1989 to July of 1997. *(Dep. of J. Mangina, p. 9)* They had two children. *(Id.)* Ms. Mangina and Mr. Knight divorced in 1997 and Kevin Knight is now married to Christy Marie Glenn Knight, one of the parties sued by his ex-wife in this lawsuit. Mangina and the Knights have been involved in a bitter and protracted domestic relations dispute since 1997. *(Dep. of J. Mangina, pp. 10, 76, 77)* Ms. Mangina has failed to make payments as required by the child support order. As a result, she was ordered to pay the delinquent child support payments in arrears. *(Dep. of J. Mangina, p. 10)*

Mangina claims that some time prior to February of 2005, Christy Knight illegally accessed her credit report. (*Dep. of J. Mangina, pp. 15, 17-20*) Christy Knight is currently employed by Green Tree Servicing, LLC in Birmingham, Alabama as an inventory control assistant and was so employed at the time of the alleged occurrence made the basis of this suit. (*Dep. of C. Knight, p. 6*) It is Christy Knight's job to repossess and sell mobile homes, process paperwork, send out notices of private sale, and she is responsible for having the homes repossessed and sold. *(Dep. of C. Knight, p. 6, 11)* It is undisputed that Christy Knight neither has access to, nor does she know how to access credit reports. Nor is there anyone in Christy Knight's office who has access to credit reports. (*Dep. of C. Knight, p. 8*)

It is also undisputed that Julie Mangina can produce no witnesses to support her allegation that Christy Knight caused a credit report to be accessed. (*Dep. of J. Mangina, p. 47*) Ms. Mangina does not claim that the alleged credit report inquiry by Christy Knight has resulted in a denial of credit to her. (*Dep. of J. Mangina, p. 56*) Nor does Ms. Mangina claim that she sustained any damages as a result of anything that Christy Knight has allegedly done. (*Dep. of J. Mangina, p. 56*) It is undisputed that Julie Mangina has published to hundreds of people the fact that she (Mangina) claims that someone at Conseco Finance/Green Tree accessed her credit report. (*Dep. of J. Mangina, pp. 57-58*) Julie Mangina does not contend that her credit score is now lower than it was prior to the date that Christy Knight allegedly ran her credit report. (*Dep. of J. Mangina, p. 71*) Subsequent to the events alleged in her complaint, Julie Mangina bought a brand new car, but had to "take it back" because she did not make enough money. (*Dep. of J. Mangina, pp. 72, 73*)

## SUMMARY JUDGMENT STANDARD

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." FED. R. CIV. P. 56 advisory committee's note, cited in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions, and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the non-movant. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir.1997), *cert. denied sub nom. Combs v. Meadowcraft Co.*, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991), *cert. denied*, 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). Such a showing shifts to the non-moving party the burden "to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed R. Civ. P. 56(e)); *Thompson*, 934 F.2d at 1583 n. 16. A non-movant does not create a genuine issue of material fact by relying on "conclusory allegations based on mere subjective beliefs." *Plaisance v. Travelers Ins. Co.*, 880 F.Supp. 798, 804 (N.D.Ga.1994), *aff'd*, 56 F.3d 1391 (11th Cir.1995) (citing *Carter*, 870 F.2d at 585). Further, a "mere scintilla of evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Flemming v. Corrections Corp. of America*, 143 Fed. Appx. 921, 924 (10th Cir.2005) (quoting *Anderson*, 477 U.S. at 247-48). The substantive law applicable to the case determines which facts are material. *Harris*, 2005 WL at *1; Flemming*, 143 Fed.Appx. at 924 (both citing *Anderson*, 477 U.S. at 248). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes that are irrelevant or unnecessary will not be counted. *Flemming*, 143 Fed.Appx. At 924 (quoting *Anderson*, 477 U.S. at 248, and citing *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000) ("A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented.")).

## ARGUMENT

I. JULIE MANGINA HAS FAILED TO PRESENT SUBSTANTIAL EVIDENCE THAT CHRISTY KNIGHT OBTAINED HER CREDIT REPORT "UNDER FALSE PRETENSES" OR THAT SHE EVER EVEN ATTEMPTED TO OBTAIN IT AT ALL.

Ms. Mangina's complaint is bottomed on *15 U.S.C. § 1681n* which reads, in pertinent part, as follows:

> "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
> **(1)** **(A)** any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> **(B)** in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;...."
>
> **(2)** such amount of punitive damages as the court may allow; and
>
> **(3)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

To prove a *prima facie* case under *15 U.S.C. 1681n*, it is Mangina's burden to show that: 1) a report was obtained under false pretenses, or 2) knowingly and without a permissible purpose, and 3) that she sustained actual damages as a result thereof.

False Pretenses Or Permissible Purpose

It is well settled that, in evaluating whether a person obtained credit report under false pretenses, a court must examine the limited permissible purposes for which consumer reports may be released. *Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction*, 811 F.2d 1368, 1370 (10th Cir.1987). Most courts agree that a person is liable for obtaining information under false pretenses when that person requests a report from an agency without disclosing the improper purpose for which the person in fact seeks the report. See, e.g., *Zamora*, 811 F.2d at 1370; *Zeller v. Samia*, 758 F.Supp. 775, 781 (D.Mass.1991). *Houghton v. New Jersey Mfrs. Ins. Co.*, 795 F.2d 1144 (3d Cir.1986) (user who *discloses* impermissible purpose not guilty of obtaining information under false pretenses). To obtain

a credit report under false pretenses, a person must make "a calculated attempt to mislead another in order to obtain information." *Graziano v. TRW, Inc.*, 877 F.Supp. 53, 57 (D.Mass.1995).

In this case, there is no need to reach the question of whether a report was obtained under false pretenses or for an impermissible purpose, as Ms. Mangina has not even established that a report was ever obtained by Christy Knight at all.

| | | |
|---|---|---|
| Page 17 | Q: | "And do you say that in any way shows or proves or provides evidence that Christy Knight did something wrong?" |
| | A: | "It shows that her company's name is on my credit report." |
| Page 18 | Q: | "...explain to me how it is that because that's on your credit report that Christy Knight did that —" |
| | A: | "You want me to explain why her company's name is on my credit report?" |
| Page 19 | Q: | "And on page 4 of it [the credit report] it's got it [Conseco/Greentree] circled on there....how is it that you say that Christy Knight had something to do with that being on that piece of paper." |
| | A: | ..."I called the Birmingham office. I spoke to a woman named Mandy..." |
| Page 20 | A: | "...she proceeds to tell me that they cannot pull credit from their computers...And Christy is the only one with access to my social security number." |
| Page 21 | Q: | "Do you claim that Christy Knight ever said that she pulled a - - or requested a credit report on you?" |
| | A: | "No." |

Without offering proof sufficient to establish that a report was ever obtained by Christy Knight, there can be no genuine issue as to whether it was obtained under false pretenses

or for an impermissible purpose.

<u>Ms. Mangina has failed to demonstrate that she has suffered any damages</u>

Not only has Ms. Mangina failed to prove that the alleged occurrence ever took place, she also admits that she has not been damaged. Mangina stated in her deposition that she has sustained no damages as a result of what she alleges as wrongdoing on the part of Christy Knight. (*Dep. of J. Mangina, p. 56*) It is undisputed that she has not been denied credit as a result of the alleged occurrence.

Page 56:  Q.  "Have you been denied any credit because of anything that you say that Christy Knight did?"

A.  "No."

Q.  "What do you claim are your damages as a result of the allegations you make against Christy Knight? What -- how do you say you've been damaged?"

A.  "It's just an invasion of my privacy."

Q.  "Okay. Have you sustained any damages as a result of anything that you say Christy Knight has done?"

A.  "None."

(*Dep. of J. Mangina, pp. 56, 57*)

She does contend, however, that the alleged actions of Christy Knight were an invasion of her privacy while, at the same time, stating that she has published the occurrence to hundreds of other people who did not otherwise know. (*Id.*)

Page 56:  Q.  "All right. Does anybody know about this fact that Conseco apparently shows up on your credit report besides you -- well, let me ask that first -- besides you?"

A.  "Everybody I can find. Everybody that, you know -- everybody."

| | | |
|---|---|---|
| Page 57: | Q. | "And is - - everybody you can find, is that - - does that mean that when you - -" |
| | A. | "Friends, family.: |
| | Q. | "Okay. When you talked to friends and family - - that information about your credit report, do you - - that Conseco's on there, do you tell them about it?" |
| | A. | "I tell them." |
| | Q. | "Okay. You're the one that publishes the information to people that don't otherwise know?" |
| | A. | "Right." |

       MR. NELMS: Object to the form.

| | | |
|---|---|---|
| | Q. | "Do you have any information that Christy Knight has published any information to anybody about your credit?" |
| | A. | "No. I do not have that." |

       MR. NELMS: Object to the form.

| | | |
|---|---|---|
| | A. | "No." |
| | Q. | "How many people do you think you've told?" |
| | A. | "Oh, a hundred." |

Thus, any damages that she sustained were a result of her own actions and she is not entitled to a recovery in this case.

  Ms. Mangina's lack of proof would leave a factfinder to indulge in speculation and conjecture to reach a finding that Christy Knight was responsible for accessing a credit report and that such act caused damage to the plaintiff. It is a well settled rule of law that "speculation may not be substituted for proof". *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1316 (11th Cir.2003).

It is undisputed that neither Christy Knight, nor anyone who worked in her office had the ability to pull credit reports:

Page 8:     Q.     "Do you have access to TransUnion credit reports?"

            A.     "No."

            Q.     "Do you know how to pull a TransUnion credit report?"

            A.     "No."

            Q.     "Does anybody in your office have access to TransUnion credit reports?"

            A.     "Not to my knowledge, no."

*(Dep. of C. Knight, p. 8)*

It is also undisputed that Ms. Mangina can produce no witnesses to support her allegation that Christy Knight caused the subject credit report to be generated:

Page 47:    Q.     "Do you know of any witnesses that can support your allegations in the complaint that Christy Knight had something to do with this credit report being generated?"

            A.     "No."

*(Dep. of J. Mangina, p. 47)*

In fact, there is no evidence that a credit report was ever even generated because of any actions on the part of Christy Knight. Ms. Mangina relies on her bare assertions that because Greentree's name appears on a credit report which Mangina printed and that because Ms. Knight had access to her social security number to deduce that Ms. Knight must have been the miscreant. Again, speculation without proof does not create a genuine issue of fact. Furthermore, lacking the proof necessary to establish that Ms. Knight ever obtained her credit report, it cannot be said that a report was obtained "under false

pretenses" or "without a permissible purpose," thus invoking the punitive damages and attorney's fees provisions of 15 U.S.C. § 1681n (a)(B)(2)(3). As Ms. Mangina's only offers of proof are mere speculation and conjecture, her claim must fail for lack of proof as a matter of law.

II. MS. MANGINA'S INVASION OF PRIVACY CLAIM MUST FAIL AS IT IS PREEMPTED BY FEDERAL LAW AND SHE LACKS PROOF SUFFICIENT TO SHOW THAT THE ALLEGED ACTS EVER OCCURRED

Ms. Mangina's State Law Invasion of Privacy Claim Is Preempted

The FCRA's qualified immunity provision preempts state law claims for negligence, wantonness, defamation, and invasion of privacy unless the consumer can demonstrate that the information was furnished with "malice or willful intent to injure." *15 U.S.C. 1681h(e); Thornton v. Equifax, Inc.*, 619 F.2d 700 (8th Cir.1980). It appears that "false pretenses" claims of *15 U.S.C. § 1681(n)* are excluded from this preemptive power. However, as demonstrated above, Ms. Mangina failed to show that Christy Knight ever obtained her credit report, much less under false pretenses, and thus, *15 U.S.C. § 1681(n)* is not applicable in this case. Therefore, as Ms. Mangina has offered no proof that Christy Knight acted with "malice or willful intent to injure" or is guilty of any wrongdoing for that matter, her state law claim for invasion of privacy is preempted.

State Law Invasion of Privacy Claim Also Fails For Lack of Proof

The Alabama Supreme Court defines the tort of invasion of privacy as "the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Rosen v. Montgomery Surgical Ctr.*, 825 So.2d 735, 737 (Ala.2001) (quoting *Carter v. Innisfree*

*Hotel, Inc.*, 661 So.2d 1174, 1178 (Ala.1995)). Under Alabama law, conduct supporting a cause of action for invasion of privacy in the context of debtor-creditor relations involves wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to person of ordinary sensibilities. *Liberty Loan Corp. of Gadsden v. Mizell*, 410 s.2d 45, 47 (Ala. 1982). "It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) *giving publicity to private information* about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 132 So.2d 321 (1961).

Here, it is Julie Mangina who is guilty of "giving publicity to [her own] private information" as she was the source of publication of the alleged facts regarding access to her credit report - not Christy Knight. There is no evidence, and therefore no fact dispute, that Ms. Knight is even guilty of the wrongdoing of which she is accused, let alone guilty of engaging in acts that illicit "outrage and mental suffering." As Ms. Mangina has presented no evidence save the bare assertions in her pleadings and deposition, that Christy Knight has done anything to constitute an invasion of privacy, her claim is due to be dismissed as a matter of law.

III. <u>MANGINA'S MISGUIDED STATE LAW CLAIMS FOR CIVIL DAMAGES PURSUANT TO CRIMINAL STATUTORY LAW MUST FAIL FOR LACK OF PROOF THAT HER CREDIT REPORT WAS EVER ACCESSED BY CHRISTY KNIGHT.</u>

Plaintiff's unfortunate decision to plead claims under Alabama's Identity Theft and Criminal Impersonation statutes, 13A-8-192 and 13A-9-18 respectively, *Code of Alabama*, 1975, must also fail for lack of any evidence that Christy Knight ever accessed Julie Mangina's credit report. These *Code* sections read, in pertinent part, as follows:

> § <u>13A-8-192</u>. <u>Identity theft</u>.
> (a) A person commits the crime of identity theft if, without the authorization, consent, or permission of the victim, and with the intent to defraud for his or her own benefit or the benefit of a third person, he or she does any of the following:
> (1) Obtains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of the victim...
>
> § <u>13A-9-18</u>. <u>Criminal impersonation</u>.
> (a) A person commits the crime of criminal impersonation if he:
> (1) Assumes a false identity and does an act in his assumed character with intent to gain an economic benefit for himself or another or to injure or defraud another; or
> (2) Pretends to be a representative of some person or organization and does an act in his pretended capacity with intent to gain an economic benefit for himself or another or to injure or defraud another...

Again, there being no proof that the acts complained of actually occurred, plaintiff's claims under the aforementioned statutes cannot survive summary judgement. This defendant is entitled to judgment as a matter of law.

## CONCLUSION

Ms. Mangina has failed to offer substantial evidence that Christy Knight obtained a copy of her credit report under "false pretenses" or that she ever even obtained a copy of her credit report at all. Furthermore, in addition to being preempted by the FCRA, Ms. Mangina failed to establish a *prima facie* invasion of privacy case or to establish civil liability under the Alabama statutes governing identity theft and criminal impersonation. There being no genuine issue as to any material fact, this defendant is entitled to judgment as a matter of law.

Respectfully submitted,

/s/ David Allred
DAVID E. ALLRED
D. CRAIG ALLRED
Attorneys for Defendant
CHRISTY MARIE GLENN KNIGHT

OF COUNSEL:

DAVID E. ALLRED, P.C.
Post Office Box 241594
Montgomery, Alabama 36124-1594
Telephone:  (334) 396-9200
Facsimile:  (334) 396-9977
E-mail:  dallred@allredpclaw.com
         callred@allredpclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing *Memorandum Brief and Argument in Support of Motion for Summary Judgment* with the Clerk of the Court for the United States District Court, for the Middle District of Alabama, Northern Division, using the CM/ECF system, which will send notification of such filing to:

    Andy Nelms, Esq. at andynelms@jaylewislaw.com.

A copy has also been served upon the following counsel and party by placing a copy of same in the United States Mail, first-class postage prepaid, on this the 2nd of February, 2006:

    R. Austin Huffaker, Jr., Esq.
    RUSHTON, STAKELY, JOHNSON & GARRETT
    Post Office Box 270
    Montgomery, Alabama 36101-0270

    CONSECO FINANCE CORPORATION
    c/o THE CORPORATION COMPANY
    2000 Interstate Park Drive, Suite 204
    Montgomery, Alabama 36109

                                /s/ Coy Allred
                                OF COUNSEL